781 F.2d 354
 23 ERC 1961, 54 USLW 2419, 16 Envtl.
L. Rep. 20,260
 WHEATON INDUSTRIES, Appellant,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; Robert E.
Hughey, in his official capacity as Commissioner
of the New Jersey Department of
Environmental Protection and
County of Cape May,
New Jersey.
 No. 85-5524.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Jan. 6, 1986.
 Decided Jan. 21, 1986.
 
 Steven A. Tasher, John P. Dean and Bonni Fine Kaufman, Donovan Leisure Newton & Irvine, Washington, D.C., for appellant Wheaton Industries.
 F. Henry Habicht II, Asst. Atty. Gen., Thomas W. Greelish, U.S. Atty., Newark, N.J., Mary Gibbons Whipple, Asst. U.S. Atty., Trenton, N.J., Martin W. Matzen, Kathleen Dewey, Dept. of Justice, Washington, D.C. (Gail Cooper, Office of Gen. Counsel, E.P.A., Washington, D.C., and Randye B. Stein, Asst. Regional Counsel, Region II, E.P.A., New York City, of counsel), for appellee E.P.A.
 Irwin I. Kimmelman, Atty. Gen. of New Jersey, James J. Ciancia, Asst. Atty. Gen., and Ross A. Lewin, Deputy Atty. Gen., Trenton, N.J., for appellee Robert E. Hughey, Com'r of the New Jersey Dept. of Environmental Protection.
 Before ADAMS, SLOVITER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Wheaton Industries filed this action to compel the United States Environmental Protection Agency (EPA) and the Commissioner of the New Jersey Department of Environmental Protection (DEP) to allow Wheaton to conduct a remedial investigation/feasibility study (RI/FS) at a site in Cape May County, New Jersey that had been contaminated with hazardous waste. The district court dismissed Wheaton's action for lack of subject matter jurisdiction, and Wheaton appeals.
 
 I.
 
 2
 In 1979 Cape May County officials discovered hazardous wastes illegally dumped on land occupied by Theodore Williams and his family. When Williams failed to take action to clean up the site, he was charged with creating a nuisance. He pleaded guilty and was sentenced to two years' probation, fined $2,000 (which was suspended), and assessed a $25 penalty. Apparently, Williams then dealt with the illegal site by puncturing drums containing the hazardous wastes and allowing the contents to seep into the soil. He removed the empty drums to a local landfill.
 
 
 3
 Soil samples taken by DEP in the fall of 1979 showed severe soil contamination. In the following year, DEP performed additional tests, installed monitoring wells, and completed a surface cleanup of the site. DEP did not begin any cleanup for potentially contaminated groundwater because further testing was necessary to determine the extent of the problem. The problem of groundwater contamination is particularly acute because the site is on top of the aquifer providing water for about 60% of the Cape May County population.
 
 
 4
 In 1984, DEP informed Wheaton that it might be a potentially responsible person for the hazardous waste contamination at the Williams site. After unsuccessful negotiation between DEP and Wheaton about the design and implementation of a RI/FS of the Williams site, DEP and EPA entered into a cooperative agreement under section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. Sec. 9604 (1982). The agreement provided that EPA would provide money to DEP to conduct the necessary RI/FS of the Williams site from the Hazardous Substance Response Trust Fund (Superfund), 42 U.S.C. Sec. 9631, which makes public money available for a variety of environmental cleanup costs.
 
 
 5
 Wheaton then filed this suit seeking a declaratory judgment and preliminary injunction which, inter alia, would enjoin the expenditure of the Superfund money on this project. Negotiations among Wheaton, DEP and EPA continued but no settlement was reached.
 
 
 6
 EPA moved to dismiss Wheaton's complaint for lack of subject matter jurisdiction or for summary judgment. Wheaton predicated jurisdiction either under CERCLA, 42 U.S.C. Sec. 9613(b), or the Administrative Procedure Act, 5 U.S.C. Sec. 704. The district court granted the motion to dismiss on the ground that CERCLA does not allow judicial review before a cost recovery action and that the EPA/DEP's refusal to allow Wheaton to perform the RI/FS was not final agency action subject to judicial review under the APA.
 
 II.
 
 7
 While the appeal was pending, this court issued its opinion in Lone Pine Steering Committee v. United States Environmental Protection Agency, 777 F.2d 882 (3d Cir.1985). There we held that judicial review is not available under CERCLA until the EPA files suit for reimbursement of costs, as authorized by section 107 of CERCLA, 42 U.S.C. Sec. 9607. We reasoned that review before that time would frustrate the statutory goal of quick remedial action in cleaning up hazardous waste sites.
 
 
 8
 Wheaton contends that Lone Pine is not controlling here because plaintiffs in Lone Pine sought to appeal from the agency's rejection of Lone Pine's proposed work plan in favor of the EPA-devised work plan, while Wheaton seeks to appeal from the agency's refusal to permit it to perform and control the RI/FS. We believe that this is a distinction without a difference. In each case, the plaintiff sought control of an activity that is a necessary component of remedial actions and based the substantive claim on section 104 of CERCLA. Therefore, the rationale for the decision in Lone Pine is equally applicable here.
 
 
 9
 Wheaton also suggests that it, unlike the plaintiffs in Lone Pine, has committed itself to fund an RI/FS that is acceptable to EPA. EPA argues, however, that substantial and important differences existed between the Wheaton plan and a work plan acceptable to the agencies. Brief of the EPA at 16. See also App. at 472-73. We need not address this dispute because, as we stated in Lone Pine, "[t]he legal question of when judicial review is available should not depend on the peculiar facts of each case." 777 F.2d at 886. We held unequivocally that pre-enforcement review of EPA's remedial actions was contrary to the policies underlying CERCLA. Thus, the district court correctly ruled that judicial review was not available under section 104 of CERCLA at this time.[1]
 
 III.
 
 10
 Wheaton argues that the Administrative Procedure Act is an alternative ground for jurisdiction. The Lone Pine decision does not discuss whether the APA can serve as an independent basis for judicial review of the EPA's action at this time, and thus the issue is before us for the first time.
 
 
 11
 Wheaton contends that the signing of the Cooperative Agreement between EPA and DEP constitutes final agency action, and that therefore it has the right to review under the APA, 5 U.S.C. Sec. 702. However, Wheaton's argument fails to take into account the effect of the provision of the APA itself that precludes judicial review under the APA whenever the relevant statute precludes judicial review. See 5 U.S.C. Sec. 701(a)(1). This duality of the APA in granting general review of agency actions but excepting therefrom those situations where the statute itself precludes review was expressly noted by the Supreme Court in Block v. Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984). There the Court stated that "[t]he APA confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. Sec. 702, but withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review,' 5 U.S.C. Sec. 701(a)(1)". Id. In Concerned Residents of Buck Hill Falls v. Grant, 537 F.2d 29, 34 (3d Cir.1976), this court also recognized the need to ascertain whether the relevant statute precluded review before we could rely on the APA.
 
 
 12
 The same reasons for resorting to the particular statute under which the challenged agency action was taken in order to determine if the APA's general presumption of reviewability is applicable would also counsel resort to the underlying statute's scheme for timing of judicial review. "[T]he APA makes clear that the review which is ordinarily presumed to be available is barred 'to the extent that statutes preclude judicial review'." Note, Statutory Preclusion of Judicial Review Under the Administrative Procedure Act, 1976 Duke L.J. 431, 449 (quoting 5 U.S.C. Sec. 701(a)(1)) (emphasis added).
 
 
 13
 In Block, the Supreme Court said, "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved". 104 S.Ct. at 2454. As we have noted above, this court has reviewed those factors in concluding that CERCLA precludes judicial review of the EPA's actions in connection with remedying and cleaning up hazardous waste sites until EPA brings suit for the costs incurred. Since CERCLA is the relevant underlying statute, its preclusion of judicial review at this time renders the APA also unavailable as a basis for judicial review.
 
 
 14
 In view of our conclusion, we need not consider the district court's alternative holding that the EPA's refusal to allow Wheaton to perform the RI/FS is not final agency action.
 
 IV.
 
 15
 Because we find there is no jurisdiction to review plaintiff's claim at this time, we do not reach the merits of Wheaton's substantive claim. We will affirm the district court's order dismissing the complaint pursuant to Fed.R.Civ.P. 12(b)(1).
 
 
 
 [1]
 Wheaton has referred the court to legislation pending in Congress that it contends would authorize it to bring this suit. The government responds that the particular provision relied upon by Wheaton has been deleted by one of the House Committees working on the bill. The legislation is still pending and may undergo additional changes before passage. Hence, we do not rely on it here, particularly since we view our decision in Lone Pine as dispositive